UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CORBET D'ENTREMONT

                         Plaintiff,

        -against-                                    1:12-CV-0060 (LEK/RFT)

ATLAS HEALTH CARE LINEN
SERVICES, CO., LLC; SCOTT
WAKEMAN, sued individually and as
as an employee of Atlas; and JANE DOE,
Quality Control Manager for Atlas, sued
individually and as agent for Atlas,

                         Defendants.
_____

## MEMORANDUM-DECISION and ORDER

## I.      INTRODUCTION

On January 12, 2012, *pro se* Plaintiff Corbet D'Entremont ("Plaintiff") filed a Complaint

against Defendants Atlas Health Care Linen Services, Co., LLC ("Atlas"), Scott Wakeman, and a

single Jane Doe Defendant ("Doe" or "the Doe Defendant") identified as a "Quality Control

Manager for Atlas" (collectively, "Defendants").  Dkt. No. 1 ("Complaint").  Plaintiff asserts federal

claims under the Americans with Disabilities Act ("ADA") and § 510 of the Employment

Retirement Income Security Act of 1974 ("ERISA").  Id.  On January 12, 2012, Plaintiff also filed a

Motion for leave to proceed *in forma pauperis*, which was subsequently granted by the Honorable

Randolph F. Treece, United States Magistrate Judge.  Dkt. Nos. 2, 7.

Following a number of extension requests by Defendants, which were granted by Judge

Treece,[1] Defendants filed a Motion to dismiss the Complaint in its entirety pursuant to Rule 12(b)(6)

_____

        [1] See generally Dkt.

of the Federal Rules of Civil Procedure on April 30, 2012.[2]  Dkt. No. 25 ("Defendants' Motion").

On May 23, 2012, Plaintiff filed a Response in opposition to Defendants' Motion.  Dkt. No. 31

("Plaintiff's Response").  Defendants, in turn, filed a Reply on June 4, 2012.  Dkt. No. 32

("Defendants' Reply").

On June 13, 2012, Plaintiff filed a Motion to amend his Complaint to name the Doe

Defendant and "fix any deficiencies the court may find."  Dkt. No. 37 ("Plaintiff's Motion").  On

June 28, 2012, Defendants filed a Response in opposition.  Dkt. No. 38 ("Defendants' Response").

Plaintiff, in turn, filed a Reply on July 13, 2012.  Dkt. No. 39 ("Plaintiff's Reply").  Presently before

the Court are Defendants' Motion to dismiss and Plaintiff's Motion to amend

## II.    BACKGROUND

The Court presumes the parties' familiarity with the factual allegations underlying this

action and recites them here only to the extent necessary to resolve the instant Motions.  For a more

complete statement of the facts, reference is made to the Complaint.

On January 14, 2011, Plaintiff began work for Atlas as a laundry sorter.  Compl. ¶¶ 8-9.

Plaintiff was given papers to sign by Doe, who also informed Plaintiff that he was on a 90-day

probation period with Atlas, after which he would be able to join the union, as well as Atlas's

medical, dental, and life insurance plans.  Id. ¶¶ 9, 11.  On his first day of work, Plaintiff worked

from approximately 7:00 AM until 7:30 PM.  Id. ¶ 12.  He was assigned to the "clean side" of the

factory, where his job duties included folding clean linen and placing it into designated carts.  Id.

Following his first day of work, Plaintiff experienced no back pain.  Id.

_____

[2] Defendants also move to dismiss the pendent state law claims under Rule 12(b)(1) in the
event that the Court dismisses the federal claims under Rule 12(b)(6).

2

The following day, after starting work on the clean side of the factory, Plaintiff was transferred to the "dirty side," where his job responsibilities involved unloading dirty laundry from trucks, carrying crates, and sorting and lifting bags of dirty laundry. Id. ¶¶ 16-17. By the end of the day, Plaintiff was experiencing slight pain in his lower back.

On January 16, 2011, Plaintiff reported for work wearing a back brace that had been provided to him by a physician. Id. ¶ 20. Plaintiff once again worked on the dirty side of the factory. Id. ¶¶ 9, 11. After lunch, Plaintiff spoke with his supervisor and told his supervisor – when asked – that he preferred working on the clean side of the factory because of his back problems.[3] Id. ¶ 23. The supervisor said that he would try to have Plaintiff reassigned to the clean side. Id. That night, Plaintiff experienced significant lower back pain. Id. ¶ 26.

The following day, January 17, 2011, Plaintiff was experiencing excruciating back pain and went to St. Mary's Hospital instead of reporting for work. Id. ¶¶ 27-29. There, he was given a doctor's note "keeping him out of work for three days." Id. ¶ 30. While he had not informed Atlas of his absence in advance or on the day of his trip to the hospital, Plaintiff called Atlas's "absentee hotline" at 12:00 A.M. on January 18, 2011, and left a message explaining the situation (including the existence of the doctor's note). Id. ¶¶ 30-35. Plaintiff did not attend work the next day, and left another message on the absentee hotline explaining that he would be missing work on January 20 for a doctor's appointment. Id. ¶¶ 37-38.

After meeting with his back specialist, Dr. Whalen, on January 20, 2011, Plaintiff left yet another message with Atlas, this time stating that Dr. Whalen was keeping him out of work for the

---

[3] Plaintiff also told his supervisor that he was wearing a back brace. Id. ¶ 23.

next seven days and asking that someone from Atlas call him to discuss the situation.[4] Id. ¶ 42. On January 21, 2011, Plaintiff brought his doctor's note to the Atlas building and rang the door bell, but no one responded.[5] Id. ¶ 43. Plaintiff left another voice message explaining that he had tried to drop off the doctor's note and stating that he would be out of work until January 26, 2011. Id. ¶ 45.

On January 26, 2011, Plaintiff finally returned to Atlas. Id. ¶ 47. He gave both of his doctor's notes to Doe and told her about his back injury and explained that he had called in to report his absences after the first day. Id. ¶¶ 47-49. Plaintiff told her that he had discussed the possibility of filing a worker's compensation claim against Atlas with Dr. Whalen, but that they had determined that Plaintiff should not because his back pain was an aggravation of a previous injury. Id. ¶ 51. At this point, Doe asked how long Plaintiff had worked for Atlas. Id. ¶ 52. Plaintiff replied "three days," Doe looked over Plaintiff's doctors' notes one more time, and told him, "[U]nfortunately, we let you go." Id. ¶¶ 53-54.

Plaintiff claims that Defendants knew he was serving a court-ordered sentence of probation at the time of his employment because he had stated it on his job application form. Id. ¶¶ 57-59. Following his firing, Plaintiff was charged with violating the terms of his probation in part due to his not having gainful employment. Id. Plaintiff was sentenced to three years' incarceration and post release probation due to his violation. Id. ¶ 60.

Plaintiff pursued state administrative remedies against Atlas for discrimination and, on October 17, 2011, received a right-to-sue letter from the Equal Employment Opportunity

---

[4] Dr. Whalen also told Plaintiff that when he returned to work, he could not lift more than ten pounds. Id. ¶ 41.

[5] From the Complaint, it is unclear whether the building Plaintiff visited on January 21, 2011 is the same as the "factory" to which he had previously reported to work.

Commission ("EEOC").  Id. ¶¶ 50-63.  The instant suit followed.

## III.    LEGAL STANDARDS

### A.  Motion to Dismiss

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6).  Such a determination "requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted).  A court must accept as true the factual allegations contained in the complaint and draw all inferences in favor of the plaintiff.  See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).  A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]."  Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).  Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that he or she is entitled to relief and the action is subject to dismissal.  See Iqbal, 556 U.S. at 678-79.

Additionally, the allegations of a *pro se* litigant are to be construed under a "less stringent

standard[] than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21 (1972); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

**B. Leave to Amend the Complaint**

Rule 15 of the Federal Rules of Civil Procedure states that "a party may amend its pleading only with the opposing party's written consent or the court's leave[,] . . . [but that t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962). As noted, the allegations of a *pro se* litigant are to be construed under a "less stringent standard[] than formal pleadings drafted by lawyers." Haines, 404 U.S. at 520-21; see also Harris, 572 F.3d at 72. "A *pro se* plaintiff, particularly one bringing a civil rights action, should be afforded an opportunity fairly freely to amend his complaint." Holmes v. Goldin, 615 F.2d 83, 85 (2d Cir. 1980); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008); Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) ("A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.").

Additionally, "'[t]he party opposing a motion for leave to amend has the burden of establishing that granting such leave would be unduly prejudicial.'" Gorham-DiMaggio v. Countrywide Home Loans, Inc., No. 1:08-CV-019, 2009 WL 1748743, at *3 (N.D.N.Y. June 19, 2009) (quoting New York v. Panex Indus., Inc., No. 94-CV-0400, 1997 WL 128369, at *2

6

(W.D.N.Y. Mar. 14, 1997)).  A district court is afforded broad discretionary power in granting leave to amend pleadings.  Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel, 145 F.3d 85, 89 (2d Cir. 1998).  However, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend."  Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993).  Where "futility is an appropriate basis for denying leave to amend, such denial should be contemplated within the standards necessary to withstand a motion to dismiss pursuant to [Rule 12(b)(6)]."  Gorham-DiMaggio, 2009 WL 1748743, at *3.

To be granted leave to amend a complaint that names a new party, Plaintiff must name a "new party [who must] be deemed to relate back to the original timely complaint."  VKK Corp. v. Nat'l Football League, 244 F.3d 114, 128 (2d Cir. 2001).  Further,

> [t]here are . . . three requirements that must be met before an amended complaint that names a new party can be deemed to relate back to the original timely complaint.  First, both complaints must arise out of the same conduct, transaction, or occurrence.  Second, the additional defendant must have been omitted from the original complaint by mistake. Third, the additional defendant must not be prejudiced by the delay.

Id. (citing Soto v. Brooklyn Corr. Facility, 80 F.3d 34, 35-36 (2d Cir. 1996)).  The goal of these "relation back" principles outlined by the Second Circuit and drawn from Rule 15(c) of the Federal Rules of Civil Procedure is "to prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense."  Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 19 (2d Cir. 1997) (quoting FED. R. CIV. P. 15 Advisory Committee Note (1991)) (internal quotation marks omitted); see also VKK Corp., 244 F.3d at 128.

## IV.  DISCUSSION

### A.  Defendants' Motion

As a preliminary matter, the Court notes that Plaintiff contends that Defendants' Motion is untimely.  Plaintiff claims that he was unaware of any extensions granted to Defendants.  A review of the docket, however, reveals that Judge Treece granted several requests by Defendants for extensions of time to respond to Plaintiff's Complaint.  Dkt. Nos. 17, 20; Text Order dated April 20, 2011.  In light of Plaintiff's *pro se* status, and in the interests of preventing continued confusion, the Court orders the Clerk of the Court to provide Plaintiff with a copy of the docket in this matter.

Next, the Court notes that the parties have submitted supplemental materials.  Where both parties submit supplemental materials not contained in the pleadings, and those materials are not excluded by the court, the motion to dismiss "must be treated as one for summary judgment under Rule 56."  FED. R. CIV. P. 12(d); see also Rotter v. Leahy, 93 F. Supp. 2d 487, 493 (S.D.N.Y. 2000).  The Court declines to consider these supplemental materials and therefore treats Defendants' Motion as a motion to dismiss.  Accordingly, the Court addresses Defendants' arguments in turn, addressing the sufficiency of Plaintiff's pleadings.

#### 1. ADA Claim

Before addressing the broader claim against Atlas, the Court concludes that Plaintiff's ADA claim against Defendant Wakeman suffers from a fatal flaw.  A defendant may not be held individually liable under Title I of the ADA.  See, e.g., Carlson v. Geneva City Sch. Dist., 679 F. Supp. 2d 355, 378 (W.D.N.Y. 2010) (stating that actions against defendants in their individual capacities are not permitted under Title I of the ADA); Fox v. State Univ. of N.Y., 497 F. Supp. 2d 446, 449 (E.D.N.Y. 2007) (same) (citing Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d

98, 107 (2d Cir. 2001).  Because this is a legal defect in Plaintiff's claim that could not be remedied by better pleadings, the Court dismisses Plaintiff's ADA claim against Defendant Wakeman with prejudice.[6]  <u>Foman</u>, 371 U.S. at 182.

"The ADA prohibits discrimination against a 'qualified individual on the basis of disability' in the 'terms, conditions, and privileges of employment.'"  <u>Kinneary v. City of New York</u>, 601 F.3d 151, 155 (2d Cir. 2010) (quoting 42 U.S.C. § 12112(a)).  To establish a *prima facie* case of discriminatory discharge under the ADA, a plaintiff must show that: "(1) her employer is subject to the ADA; (2) she suffers from a disability within the meaning of the ADA; (3) she could perform the essential functions of her job with or without reasonable accommodation; and (4) she was fired because of her disability."  <u>Ryan v. Grae & Rybicki, P.C.</u>, 135 F.3d 867, 869-70 (2d Cir. 1998) (citing <u>Heilweil v. Mount Sinai Hosp.</u>, 32 F.3d 718, 722 (2d Cir. 1994); <u>Bates v. Long Island R.R.</u>, 997 F.2d 1028, 1035 (2d Cir. 1993)).

Courts analyzing discrimination claims under the ADA apply the three-step burden-shifting approach articulated by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1972); <u>McBride v. BIC Consumer Products Mfg. Co., Inc.</u>, 583 F.3d 92, 96 (2d Cir. 2006)  At the first stage, the burden of production rests with the plaintiff to make out a *prima facie* case of discrimination.  <u>See</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506 (1993); <u>Bickerstaff v. Vassar Coll.</u>, 196 F.3d 435, 446 (2d Cir. 1999).  This initial burden is not a heavy one.  <u>See</u> <u>Abdu-Brisson v. Delta Air Lines, Inc.</u>, 239 F.3d 456, 467 (2d Cir. 2001); <u>Zimmermann v. Assocs. First Capital Corp.</u>, 251 F.3d 376, 381 (2d Cir. 2001).  After the plaintiff has made a *prima facie* case, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for its action.

---

[6]  For the same reasons, the Court dismisses Plaintiff's ADA claim against Defendant Jane Doe with prejudice.

McDonnell Douglas, 411 U.S. 792 at 802.  If the defendant is able to make such a showing, the burden shifts back to the plaintiff to "produce evidence and carry the burden of persuasion that the proffered reason is a pretext."  McBride, 583 F.3d at 96.

To survive a motion to dismiss, however, "a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a *prima facie* case of discrimination under the framework set forth in McDonnell Douglas Corp."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002); see also Boykin v. KeyCorp, 521 F.3d 202, 212 (2d Cir. 2008); Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010).  "[T]he McDonnell Douglas burden-shifting framework 'is an evidentiary standard, not a pleading requirement."  Boykin, 521 F.3d at 212 (internal quotation marks omitted).  The elements of a *prima facie* case do, however, "provide an outline of what is necessary to render [a plaintiff's employment discrimination] claims for relief plausible."  Sommersett v. City of New York, No. 09 Civ. 5916, 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011).  Courts therefore "consider these elements in determining whether there is sufficient factual matter in the complaint which, if true, gives Defendant a fair notice of Plaintiff's claim and the grounds on which it rests."  Murphy v. Suffolk Cnty. Cmty. Coll., No. 10 Civ. 0251, 2011 WL 5976082, at *5 (E.D.N.Y. Nov. 29, 2011).

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))."  42 U.S.C. § 12102(1).  For an individual to be "regarded as having an impairment" under 42 U.S.C. § 12102(1)(C), the individual must establish "that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether

or not the impairment limits or is perceived to limit a major life activity." Id. § 12102(3)(A).

However, paragraph (1)(C) "shall not apply to impairments that are transitory and minor. A

transitory impairment is an impairment with an actual or expected duration of 6 months or less."[7] Id.

§ 12102(3)(B).

Congress enacted the ADA Amendments Act of 2008 ("ADAAA"), effective January 1,

2009, which expanded the class of individuals entitled to protection under the ADA.[8] "Following

the amendments, major life activities no longer need to be of 'central importance,' and may include

'caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing,

lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and

working.'" Sam-Sekur v. Whitmore Group, Ltd., No. 11-CV-4938, 2012 WL 2244325, at *6

(E.D.N.Y. June 15, 2012) (quoting 42 U.S.C. § 12102(2)(A)).

In this case, Plaintiff alleges that he has back problems and that Atlas terminated his

employment as a result of his health issues. See generally Compl. ¶¶ 64-70. Liberally construed,

his Complaint alleges that: (1) Atlas is subject to the regulations of the ADA; (2) Plaintiff was

physically able to perform the job duties associated with the clean side of the Atlas factory; (3)

---

[7] See also Kennebrew v. N.Y.C. Hous. Auth., No. 01 CIV 1654, 2002 WL 265120, at *18 n.32 (S.D.N.Y. Feb. 26, 2002) ("[T]emporary, non-chronic impairments of short-duration, with little or no long term or permanent impact, are usually not disabilities.").

[8] The Ninth Circuit has stated that:
In the ADAAA, Congress emphasizes that when it enacted the ADA in 1990, it "intended that the Act 'provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities' and provide broad coverage." The ADAAA rejects the Supreme Court's interpretation of the term "disability" in Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999), and Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184 (2002), and thereby expands the class of individuals who are entitled to protection under the ADA.
Rohr v. Salt River Project Agric. Improvement & Power Dist., 555 F.3d 850, 853 (9th Cir. 2009) (citations omitted).

Plaintiff suffered from a chronic back problem that was aggravated by the heavy lifting he had to perform on the dirty side of the Atlas factory; (4) Atlas found out about this disability through his phone messages and ultimately through his doctors' notes; and (5) Doe ultimately fired him because he was disabled. See generally id.

Defendants contend, however, that Plaintiff's ADA claim is deficient because: (1) Plaintiff has failed to allege that he was disabled under the language of the ADA; (2) Plaintiff has made no assertion that Atlas provided preferential treatment to non-disabled employees; and (3) Atlas had no notice of Plaintiff's alleged disability. See generally Def.'s Mot. at 6-10. Defendants' argument is essentially that Plaintiff was fired immediately upon his failure to report to work on January 17, 2011, for violating the attendance policy for probationary employees and that – even if Plaintiff's back injury amounted to a disability, and even if Defendants were eventually placed on notice – Defendants were not on notice of the disability until January 18, 2011. See generally id.

Mindful of Plaintiff's *pro se* status and of the Second Circuit's admonition that a plaintiff's burden of establishing a *prima facie* case at the initial McDonnell Douglas pleading stage "is neither onerous nor intended to be rigid, mechanized or ritualistic," Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 467 (2d Cir. 2001) (internal citations and quotation marks omitted), the Court denies Defendants' Motion to dismiss as to the ADA claim. Plaintiff's *prima facie* case may be lacking in great detail as to the specifics of his disability, his description of his ability to perform the essential functions of his job may be sparse, and his recitation of causation may not be unassailable, but the Court concludes that his pleadings "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Further, given Plaintiff's detailed account of his brief employment, his interaction with physicians, and his ultimate encounter with Doe, the Court concludes that the Complaint

provides Defendants with sufficient notice as to the nature of the claim.

### 2. ERISA Claim

As pleaded, Plaintiff's ERISA claim, even liberally construed, may not go forward. In his Complaint, Plaintiff states his claim under § 510 of ERISA. Section 510 provides in pertinent part that

> [i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

29 U.S.C. § 1140; Sandberg v. KPMG Peat Marwick, L.L.P., 111 F.3d 331, 333 (2d Cir. 1997). "Section 510 was designed primarily to prevent unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." Dister v. Cont'l Grp., Inc., 859 F.2d 1108, 1111 (2d Cir. 1988) (citation omitted); see also Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 143 (1990) ("By its terms § 510 protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting."). "There is, however, no cause of action under section 510 where the loss of pension benefits 'was a mere consequence of, but not a motivating factor behind, a termination of employment.'" Lightfoot v. Union Carbide Corp., 110 F.3d 898, 906 (2d Cir. 1997) (quoting Dister, 859 F.2d at 1111).

Plaintiff has failed to allege that an applicable plan exists or that he was covered under such a plan in such a way as to trigger protections under ERISA. Further, Plaintiff's Response to Defendants' Motion simply makes vague references to a claim that was submitted to an insurance company that he is trying to locate and contains no argument affirmatively identifying himself as a harmed beneficiary. Therefore, Plaintiff's ERISA claim is dismissed. However, in light of

Plaintiff's *pro se* status and absent any reason to conclude that Defendants would be prejudiced by amendment, the Court grants Plaintiff leave to amend this claim.

### 3. The State Law Claims

So long as a district court's original jurisdiction was not founded solely on diversity of citizenship, "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). A district court may retain pendent jurisdiction over state law claims whenever the state law claim(s) and the federal claim(s) (through which original subject matter jurisdiction was obtained), "derive from a common nucleus of operative fact." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

"Pendent jurisdiction is 'a doctrine of discretion' for the district court." Raucci v. Town of Rotterdam, 902 F.2d 1050, 1054 (2d Cir. 1990) (quoting Gibbs, 383 U.S. at 726). "[T]he doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988).

In the instant case, the Court concludes that all of the claims alleged arise from a "common nucleus of operative fact" – Plaintiff's discharge from Atlas. Because the Court has found that at least one federal claim survives Defendants' Motion to dismiss, and absent any other showing of prejudice or argument as to why it would be imprudent for the Court to exercise jurisdiction over Plaintiff's state law claims, the Court exercises its discretion to retain jurisdiction over Plaintiff's state law claims.

### a. Breach of Contract

Under New York law, "an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." First Investors Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 168 (2d Cir. 1998). "[A]bsent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by any party." Sabetay v. Sterling Drug, Inc., 69 N.Y.2d 329, 333 (1987); accord DePetris v. Union Settlement Ass'n, Inc., 86 N.Y.2d 406, 410 (1995).

"[A]n employer's virtually unfettered power to terminate an at-will employee does not negate its duty to abide by promises made prior to termination." Parker v. Columbia Pictures Indus., 204 F.3d 326, 339 (2d Cir. 2000) (citing Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1196 (2d Cir. 1989)). However,

> [t]o sustain a cause of action for breach of an employment contract, a discharged employee must show that the employee handbook, or some other enforceable employment contract, contained an express limitation prohibiting the employee's discharge except for cause, and that the employee specifically relied upon this language.

Howley v. Newsday, Inc., 627 N.Y.S.2d 85, 86 (App. Div. 1995). "The complaint [in a breach of contract case] 'must, at a minimum, allege the terms of the contract, each element of the alleged breach and the resultant damages in a plain and simple fashion.'" Power Travel Int'l., Inc. v. American Airlines, Inc., 257 F. Supp. 2d 701, 704 (S.D.N.Y. 2003) (quoting Zaro Licensing, Inc. v. Cinmar, Inc., 779 F. Supp. 276, 286 (S.D.N.Y. 1991)).

In this case, Plaintiff states that he reached an oral, or at the very least, an implied agreement with Atlas that if he worked for 90 days as a probationary employee he would receive "certain privalages [sic] offered by the company." Pl.'s Resp. at 13. Construed liberally, this is clearly a conditional agreement – if Plaintiff were to perform one task (satisfactorily perform his job duties for 90 days), then Atlas would confer certain benefits. However, Plaintiff contends that by

unlawfully firing him before he worked for 90 days, Atlas breached its contract. The Court concludes that – to the extent Plaintiff had an oral or implied contract – he has misidentified the contract as one for a 90-day term of employment. Taking Plaintiff's allegations as true and drawing all inferences in his favor, the Court concludes that Plaintiff did not have a contract for a 90-day term of employment; rather, he had been guaranteed benefits *if he worked* for 90 days. Because Plaintiff has failed to allege (1) the existence of a contract, (2) performance, and (3) breach, the Court grants Defendants' Motion to dismiss Plaintiff's breach of contract claim. Further, the Court concludes that this claim is deficient as a matter of law and could not be remedied by better pleading; therefore, the Court dismisses this claim with prejudice and does not grant Plaintiff leave to amend. <u>Foman</u>, 371 U.S. at 182.

<b>b.</b> <u>Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

"New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." <u>Harris v. Provident Life & Accident Ins. Co.</u>, 310 F.3d 73, 81 (2d Cir. 2002). Therefore, a claim alleging breach of the implied covenant of good faith and fair dealing "can survive a motion to dismiss 'only if it is based on allegations different than those underlying the accompanying breach of contract claim.'" <u>ARI & Co. v. Regent Int'l Corp.</u>, 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003) (quoting <u>Siradas v. Chase Lincoln First Bank, N.A.</u>, No. 98 Civ. 4028, 1999 WL 787658, at *6 (S.D.N.Y. Sept. 30, 1999)).

In this case, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is based on identical factual allegations to the ones underlying the breach of contract claim. Therefore, the Court grants Defendants' Motion to dismiss this claim. Further, even granting

16

Plaintiff's Complaint a liberal reading, the Court concludes that this claim in Plaintiff's case is inherently duplicative of his claim for breach of contract. Therefore, because the deficiency here is one of law and not based on a pleading error, the Court dismisses this claim with prejudice and does not grant Plaintiff leave to amend. <u>Foman</u>, 371 U.S. at 182.

<u>c. Defamation</u>

The elements of a defamation claim in New York are "a false statement, published [by the defendant] without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and, it must either cause special harm [to] or constitute defamation per se [of the plaintiff]." <u>Feldman v. Edwab</u>, No. 1:10-CV-0261, 2011 WL 1298717, at *5 (N.D.N.Y. Mar. 31, 2011) (Kahn, J.) (quoting <u>Dillon v. City of New York</u>, 704 N.Y.S.2d 1, 5 (App. Div. 1999)) (internal quotation marks omitted); <u>accord</u> <u>O'Neill v. N.Y.U.</u>, 944 N.Y.S.2d 503, 513 (App. Div. 2012).

In this case, Plaintiff alleges that statements made by Defendants Doe and Wakeman were defamatory under New York law. Compl. ¶ 85. However, even under a liberal reading of his Complaint, Plaintiff fails to specify what statements were allegedly defamatory or to flesh out this claim with anything other conclusory allegations that the statements were made with malice. <u>Id.</u> Therefore, the Court grants Defendants' Motion to dismiss Plaintiff's defamation claim. In an abundance of caution and in light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to amend this claim.

<u>d. Intentional Infliction of Emotional Distress (IIED)</u>

In order to state a claim for IIED in New York, a plaintiff must show: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing,

severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999). The standard for stating a valid claim is "rigorous, and difficult to satisfy" because the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Howell v. N.Y. Post Co., 81 N.Y.2d 115, 122 (1993) (internal quotation marks and citation omitted). Further, IIED is a "highly disfavored claim[ ] under New York law." Williams v. City of Mount Vernon, 428 F. Supp. 2d 146, 160 (S.D.N.Y. 2006) (citation and internal quotation marks omitted); see also Seltzer v. Bayer, 709 N.Y.S.2d 21, 23 (App. Div. 2000) ("This threshold of outrageousness is so difficult to reach that, of the intentional infliction of emotional distress claims considered by the Court of Appeals, every one has failed because the alleged conduct was not sufficiently outrageous." (citation and internal quotation marks omitted)).

As with Plaintiff's defamation claim, Plaintiff's IIED claim – even when granted a liberal reading – consists only of a number of conclusory statements and a recitation of the generic elements of an IIED claim. Therefore, the Court grants Defendants' Motion to dismiss the IIED claim. In an abundance of caution and in light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to amend this claim.

### e. Civil Conspiracy

The basis for this claim is unclear. In his Response to Defendants' Motion, Plaintiff cites Georgia state case law as well as 42 U.S.C. §§ 1983 and 1985. Pl.'s Resp. at 14-15. Further, the Court is unable to discern what tortious acts might serve as the predicates for this claim. Even construing Plaintiff's Complaint and submissions with the utmost liberality, both the legal and

factual bases for this claim are unclear. Therefore, the Court grants Defendants' Motion to dismiss the civil conspiracy claim. However, in an abundance of caution and in light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to amend this claim.

**B. Plaintiff's Motion**

Because the court grants Plaintiff leave to amend his Complaint consistent with the terms of this Memorandum-Decision and Order, the Court denies Plaintiff's Motion to amend as moot.

## V.     CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 25) to dismiss is **GRANTED in part and DENIED in part** consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that Defendants' Motion (Dkt. No. 25) to dismiss Plaintiff's ADA claims against all Defendants other than Defendant Wakeman is **DENIED**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED in part** in accordance with this Memorandum-Decision and Order such that: (1) Plaintiff's ADA claim against Defendant Wakeman is **DISMISSED with prejudice**; (2) Plaintiff's ADA claim against Defendant Jane Doe is **DISMISSED with prejudice**; (2) Plaintiff's ERISA claim is **DISMISSED without prejudice**; (3) Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing are **DISMISSED with prejudice**; and (4) Plaintiff's claims for defamation, IIED, and civil conspiracy are **DISMISSED without prejudice**; and it is further

**ORDERED**, that Plaintiff's Motion (Dkt. No. 37) is **DENIED as moot**; and it is further

**ORDERED**, that if Plaintiff wishes to amend his Complaint (Dkt. No. 1) and proceed with this action, he must do so **within thirty (30) days** from the date of filing of this Memorandum-

Decision and Order. If Plaintiff does not comply with this Memorandum-Decision and Order and file an amended complaint in a timely fashion, however, the Complaint (Dkt. No. 1) will remain the operative pleading and only those claims not dismissed by this Memorandum-Decision and Order will remain; and it is further

ORDERED, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties.

IT IS SO ORDERED.

DATED:      March 13, 2013
            Albany, New York


_____
Lawrence E. Kahn
U.S. District Judge